Our next case this afternoon is People v. Maurice Day, 424-1371 for the Apollo. Please state your name. I'm Ken.  I'm Ken. For the FLE, please state your name, sir. I'm Ken. By the way, I want to note that we're able to start early because of the other case ending early. We asked counsel to be present so in case it could happen, we could start early and you're here. I want to thank you both for that. It's a convenience for the court to be able to get going and proceed. Okay, Mr. Williams, you may proceed, sir. Thank you, sir. My name is Jimmy John Williams and it's my privilege to represent the state for this honorable court. So in this case, three Springfield police officers were on control. After a routine traffic stop, they learned of a gang party that was being hosted by a local street gang known as S.Q.U.A.D., I assume is how it's pronounced, at the Statehouse Inn. So they proceeded to go to the Statehouse Inn. As soon as they get to the parking lot near the Statehouse Inn, the very first car they encounter is a silver Hyundai that was backed into the spot. And the defendant was sitting in the driver's seat with the door open, feet on the ground, suggesting that he'd either recently driven to or was about to drive away from that location. Police illuminated the interior of his car, immediately noticed a half-drink or nearly empty bottle of tequila. And they asked the defendant to step out of the car. As he does so, he pulls a gun, which fortunately the police were able to wrestle away. No shots were fired. No one was hurt. And so the state filed a number of charges against the defendant. Trial counsel filed a motion to suppress, arguing that the police lacked reasonable suspicion. At the hearing, despite counsel having the burden of proof, counsel asked almost no questions regarding various signs of intoxication. And then argued that the lack of testimony proving reasonable suspicion existed proves that it did not exist. The trial court agrees, explaining that reasonable suspicion was lacking and that the police asked the defendant to step out of the car slightly too soon. State then files a motion to reconsider, addressing a lot of the arguments that we've now raised on appeal, which admittedly there are a lot of moving parts, but to briefly summarize before getting into each. Essentially our position is that reasonable suspicion did justify the slight intrusion of simply asking the defendant to step out of his car. Even if reasonable suspicion was lacking, a seizure did not occur because the defendant did not submit to that seizure, but instead pulled a gun. Even if it could be said that the defendant submitted to the seizure by stepping out of the car, despite pulling the gun, doing so nevertheless ended that seizure. With regard to the tip you referred to earlier, is my understanding correct that the only testimony presented at the hearing on the motion to suppress was from the three officers? I believe so, Your Honor. And one of them testified that they'd received information, the police had, that there would be a gang party at the State House Inn related to the gang, quote, squad, unquote. Is that right? Mm-hmm. And they went then to the area at approximately 11, 20 p.m. to the State House Inn parking lot? That sounds correct, Your Honor. I know it was late at night. So there was no contrary testimony presented about how they happened to go there and that this was related to a supposed gathering of a gang party in that parking lot. Is that correct? That's correct. Okay, go ahead. Well, and then just to finish up my quick summary of the arguments, our position finally is that even if pulling the gun did not end the seizure, it nevertheless interrupted and attenuated the chain of causation between the seizure and the discovery of the gun. Now, ultimately, whatever rationale prevails here, exclusion cannot possibly be the result. I don't believe that it's at all hyperbolic to say that the trial court's reasoning here essentially provides a license to kill. If the defendant here can benefit from Fourth Amendment protections despite his violent response to the slightest of intrusions, step out of your car, then seemingly any act, no matter how violent, would similarly be excluded. I guess for clarification, because I know you're giving a summary before you jump into all of your arguments, but I guess I'd like to know at the point Officer Zuck asked the defendant to step out of the car, was that a seizure? Well, okay, I'll jump right into that part, Your Honor. So this case, it appears to reveal a bit of tension in Fourth Amendment jurisprudence between the Mendenhall free-to-leave test and the Hidari B submission test as to when a seizure occurs. And frankly, my research has not clearly revealed how exactly to reconcile this, but it seems to me that the free-to-leave test is inapplicable here because the defendant did not ultimately submit. Had he submitted, we can look back and say that he may have been seized at this particular time. But here, where he did not actually submit, it seems like the Hidari B line of cases is more applicable. And that provides us a submission based on a show of authority only occurs when one submits to that show of authority. And here, our initial position is that the defendant did not submit, but instead pulled a gun. And it's for that reason that we initially submit that a seizure never even occurred. Now, one of our alternative positions is that even if the seizure did occur based on this submission, the defendant nevertheless ended that seizure by pulling the gun. After all, if a seizure only occurs when the defendant submits, it reasonably follows that when the defendant's submission ends, that seizure ends. And here, any illegal seizure would have ended when the defendant pulled the gun. Now, there are a number of cases addressing a very similar situation, Anderson, Keyes, and Morgan. But admittedly, those cases involve a defendant fleeing from, not fighting with, police. So the question is, must one actually escape from the police in order to end a seizure? And personally, I do not see a material difference between fighting with or fleeing from the police because in any event, the submission to the seizure has ended through that resistance, requiring a new and distinct seizure that's no longer tied to the original seizure. So again, if a seizure occurs based on when the defendant submits, it reasonably follows that if the defendant's submission ends, that seizure ends. Ultimately, whether the defendant failed to submit to the seizure by pulling the gun or illegal seizure. Now, even if, getting to the attenuation, even if pulling the gun did not end the seizure, it was nevertheless an intervening circumstance that interrupted and attenuated the chain of causation between the seizure and the discovery of gun. Now, the trial court here rejected this argument, but did so based on the but-for sort of reasoning that has long been rejected in Fourth Amendment jurisprudence since as far back, I believe, as long sung. The question is not whether the gun would have been discovered but for the police actions, but rather it's whether the chain of causation was interrupted by an intervening circumstance. And here, the state's position is that pulling the gun on the police officer was an intervening circumstance. So that attenuation factor favors the state. Another attenuation factor that I submit favors the state is the purpose and flagrancy of the police conduct. Because here, there's no suggestion that police engage in intentional misconduct. At worst, reasonable suspicion was somewhat lacking, and therefore, at worst, the police asked the defendant to step out of his car slightly too soon. Now, getting back to public policy considerations, exclusion in these sort of circumstances would create a perverse incentive structure where illegal police conduct is met with violence in the streets rather than challenges in the court. And the Constitution has never conferred a right to resist the police even if their conduct is illegal. To hold otherwise would dangerously elevate suppression principles over public safety, which again gets back into what line of cases actually controls this issue, which I think is one of the more interesting things about this case. Now, moving on to the burden-shifting argument, the state has also submitted that even if it failed in proving that the gun was not the fruit of an illegal seizure, the defendant nevertheless failed to carry his ultimate burden of proving that it was. So, I'll give you an analogy, just as the state's failure to prove guilt beyond a reasonable doubt is not proof of innocence, the state's failure to prove the existence of reasonable suspicion is not proof that it was lacking. That ultimate burden remained with the defendant. And here, despite having that burden, the defendant had the burden of proving that reasonable suspicion of DUI was lacking. And yet, counsel almost entirely failed to inquire about any of the common signs of intoxication, and then turned around and argued that the lack of testimony proving reasonable suspicion existed proved that it did not. But counsel's failure to ask if the defendant exhibited signs of intoxication does not prove that he didn't. She just didn't ask the questions. So, ultimately, we submit that a record silence on the occurrence of a particular act or the existence of a particular fact does not prove that that act did not occur or that that fact did not exist. And unless the court has any further questions, we would ask. I don't see them. I would ask that you move versus the trial court's ruling. Thank you for your time. Thank you. Mr. Arcus, on behalf of Appleby, you may present your argument, sir. Thank you, Your Honor.  Good afternoon, and may it please the court. Counsel. Counsel. My name is Dan Arcus. I represent Maurice Day, and I'm with the Office of the State Appellate Defender. This case presents one issue for this court to decide, that is whether or not the trial court properly granted Mr. Day's motion to suppress evidence, which was obtained from an all-lawful seizure. Mr. Day respectfully requests that this court affirm the trial court's order granting his motion to suppress evidence. Well, I have a lot of questions leading up to the ultimate decision. Let me begin with some. First question is, what legal justification does a police officer need to walk up to a parked car and ask its occupants questions? Well, in initial matters, Your Honor. Do you need me to repeat that? No. I understood your question, Your Honor.  So the point that the trial court made was that counsel, excuse me, I have a lot of questions I want to ask you. I understand these may not be from the scenario in this case, but I'd like you to answer my questions. So let me restate my question. What legal justification does a police officer need to walk up to a parked car and ask its occupant questions? Well, they need, in an initial matter, they need reasonable suspicion. They need reasonable. So how about to walk up to someone on a parked bench and ask them questions? Well, I think what you're describing, Your Honor, is comedic caretaking or consensual. Whatever you want to call it. Before a police officer can walk up to a parked car or walk up to a parked bench and ask questions of someone, there must be reasonable suspicion of something? Yes, of a crime occurring. And the initial reason why the officers were there is because of a squad parking, which they learned, which officers learned earlier from a traffic stop. Is it your contention, by the way, that the trial court thought, and you agreed that the case would not be before the court if it were not for the officers' initial and lawful stuff? Your Honor, let me put those statements into context. So what's the question? Is that your argument? No, that's not the argument. It's not a blackboard test. That is something that the state, I do agree with, that it's not a blackboard test. But in context, the trial court said in response, this is on page 108 of the report of proceedings, this is talking about the temporal proximity between the initial seizure and the discovery of the gun. Then, I won't read the whole thing, but it says, how can you make a difference between the two temporally or otherwise when you're talking about the gun not being fruit of the poisonous tree because the way I view it, it is not, had he been ordered out of the car in the first place, we wouldn't be here. So I don't know how it's not fruit of the poisonous tree. Are you claiming that the officers made an unlawful stop? Yes, Your Honor. What stop occurred here? So when the three officers approached Mr. Day, all they had known is that there was a game party taking place at the Statehouse Inn. So they surround his vehicle. Again, the only thing the officers... I may not have been clear. I use the term advisable. What stop was made in this case? What's the stop that's made in this case, Your Honor? Yes. His movement, Mr. Day's movement is restricted on all sides. Well, he was sitting in the parked car when they walked up. That's correct. So what was the stop? The stop? The stop was? Well, let me read the decision of this court, People v. Woods from 2013. Initially, we know that the defendant's characterization of his interaction with Officer Mendiola's stop is inaccurate. We also find that characterization implies that the defendant was seized when Mendiola approached the defendant. Contrary to party's characterization, no stop occurred in this case. When Mendiola parked his vehicle next to the defendant in Jackson, walked up to Jackson's vehicle where the defendant was in the driver's seat, and began asking the defendant questions, Mendiola and the defendant were engaged in a classic consensual encounter, which means that they didn't have to answer questions. There was no stop. That's where we were 30 years ago. Were we wrong? Yes, Your Honor. In this case. Because there was a stop. I mean, you know, we're talking about the English Language here, Counsel. Doesn't the stop mean you're moving and are stopped? No, that's not correct, Your Honor. So, stop, again, by your own definition, Your Honor, someone could be stopped. If someone is stopped on the side of the road, just as the defendant was in McDonough, an officer who then perpetuates a traffic stop at the side of a four-lane busy highway, that would not be considered a stop? Well, don't you have to be moving or doing something or even be blocked, maybe? So. Here's another quote. This is from talking about from the Springboard of Illinois quoting Professor Lefebvre. The police may approach and question a person seated in a parked vehicle. That's your client, isn't it? Yes, sir. As Professor Lefebvre noted, if an officer merely walks up to a person standing or sitting in a public place or, indeed, who is sitting in a vehicle located in a public place, that's your client, isn't it? No, that's not correct, Your Honor. He was found in a public place. Well, let me finish. And puts a question to him, this alone does not constitute a seizure. What part of your case isn't consistent with what I just wrote? Your Honor, my client was in a private parking lot that was actually conceded by the state in its opening brief. He was in a- You mean the statehouse, this doesn't apply because the public, it's in a public place because of the statehouse in parking lot? That's correct, Your Honor. Well, that might be the case for purposes of whether the lawful transportation of liquor applies. That sort of makes no sense in this context, Counsel. He has no connection to the statehouse in. This isn't his property. For all practical purposes, this is a public place, just like a parking lot at Kmart would be a public place, isn't it? That's not correct, Your Honor. So a cop can't walk up. Your position is a police officer has to have reasonable suspicion of something. Yes. He has to walk up and have a conversation with someone seated in a vehicle. That's correct, Your Honor. And this court's decision that I quoted to you was simply wrong. Yes, because, Your Honor, all the officers knew at the point of entering the statehouse in is that there was a gang party occurring. They had no reason to believe Mr. Day was committing any sort of crime. Yet one officer, Officer Wise, came in with a... So that wasn't enough to walk up to the defendant as he was sitting in the car with his feet on the pavement and ask him any questions? No, it's not enough, Your Honor, because Illinois v. Warlow says that...  Being in an area with suspected criminal activity alone is not enough to be... Did Warlow involve a stop? Wasn't that an issue with Warlow? Wasn't he stopped? He wasn't sitting in a vehicle or sitting on a park bench, was he? I believe it involved a stop, Your Honor. And why should that apply to someone just sitting here? But how was that a stop? What happened? Your Honor, because his movement is restricted. Whether or not he's stopped or whether or not he's just sitting there... Again, the officers clearly did not want Mr. Day to leave his position. Well, did he try to get up and get away and they stopped him? Yeah. No, that's not what happened. That's not what happened. When they came up and talked to him, he didn't get up and try to get away. That's right. So, in essence, he submitted to the seizure. You mean by sitting there and doing nothing, he submitted to the seizure? He didn't sit there and do nothing, Your Honor. He answered direct questions by... Did the questions constitute a seizure? No, the questions by itself didn't, but the officers' positioning. Then the trial court found that Mr. Day was seized, given the positioning of the officers, Officer Craven at the front quarter panel of the vehicle with his top stick, Officer Wise in the back of the vehicle, and then Officer Toc, of course, being at the driver's side. So, again, it is our position that Mr. Day was seized. And then going back to Justice Lantern's question, Mr. Day was seized when he was asked to get out of the car, and then he ultimately complied by getting out of the car and then turning around. He ultimately complied with Officer Zack's order, and the trial court found that to be the case, too. The trial court found, again, this is a quote from page 98 of the reported proceedings. Well, sure, he did submit to officers' demands. Didn't he stand up? Was it the testimony that it was a lawful order to get out, to stand up, get out of the car, and he stood up and got out of the car? Well, how about that? Let's assume the cop is now standing there, and he's talking to him. He says, is this your car? No. Where is your car? It's over there someplace. And then the officer says, please stand up and get out of the car. And I think he says something along the lines of, put your hands on the top of the car. And at that point, the defendant stands up and turns around, and that's when the business about pulling the gun is about. Is that correct? Not entirely, Your Honor. So what happened was, from the video, I'm looking at it from Officer Zaks' point of view, you can only see the back of Mr. Day. So Mr. Day makes a movement towards his waistband. I believe Officer Zaks says, what are you doing? And then a struggle ensues. Okay, but it seems to me, for the reason that I mentioned, based upon the case law that this court has written, no stop or seizure occurred at all, not even arguably until such time, arguably, as the officer says, stand up, and out of the car, put your hands on the roof of the car. At this point, we're talking about what amounts to a question of a frisk in the law governing stop and frisk. We don't have a stop, but we still have the question of a frisk. And whether or not it was reasonable under all the circumstances for the officer to do a frisk, which is clearly what he was intending to do, is put your hands on the car, when your client pulled a gun. Now, I asked Mr. Williams about the nature of the tip, and it was that they received information that there would be a gang party at the Statehouse Inn related to the gang squad. There was no disputed evidence about that, was there? No, Your Honor. So with that in the justification for the frisk, that would be a matter to go into the police officer's thinking on why, if I'm going to be talking to this guy who's in this peculiar position and the tip of being a gang member, it might be a good idea to frisk him. But no one argues at the trial level or argued before this court that the real issue was the legitimacy of the frisk. Instead, you're arguing about the nonexistent stop. Well, with respect to your last point, the officers never testified that they were suspicious that Mr. Day was a gang member. Why would they have to testify to that when they testified to the reason they went there in the first place? Because, well— They received information that there would be a gang party at the Statehouse Inn related to the gang squad, and they show up, and here's a guy in very peculiar posture at 1120 while he's sitting in a car with his feet on the curb on the pavement. Why isn't that enough for them to think, well, you know, this guy might be part of that gang we had a tip about, and maybe then we need to frisk him? No, that's not enough, Your Honor. So— Because a guy like that certainly wouldn't have a gun as I'm talking to him. Is that your position? That's correct. Except for the fact that he pulled a gun, isn't it, the case, right? The court never found that Mr. Day pulled a gun. Again, I read the language of the court. You mean the gun, the cops yelling, gun, gun, and the gun being thrown, that was no evidence that he defended a gun? I never said that Mr. Day did not have a gun. I said that the trial court never found that Mr. Day pulled a gun. Where did it come from? What do you mean it didn't? Didn't he reach his hand down to what the cops say, reach his hand down to his waist? To his waist, Your Honor. And he comes up with a gun? What inference did you draw, counsel? Again, the trial court found that, again, a struggle ensued and the gun was produced. Again, the state characterizes it as pulling a gun on the police. That, I think, is just, again, it's dead. That's not what happened? No. So how did the gun get in his hand? The cop give it to him? Again, the gun was, there was a struggle for the gun that came from the waist end. It's not clear based off the video whether or not who pulled the gun from the waist end. So the cop pulled the gun and the defendant took it away from him? Your Honor. Does any of that matter? We're talking about, again, it seems to me the only real issue here on any question of legality is the frisk, since there was no stop. But no one ever argued the legality of the frisk before the trial judge. The judge didn't address it and you didn't address it either. You talked about the stop and seizure, but there was neither. Your Honor, there was a stop. There was a stop when Mr. Day's movement was restricted by three officers. Again, three officers came to the state house and the only knowledge that the officers had, again, Officer Wise had testified, that he did not spot the bottle until he was within a matter of feet of the car. And that is when the officers had illuminated the car and found the bottle of the tequila. Let me give you another quote from this court. This was ten years ago, dealing with how to deal with the intention of police officers. The touchstone of the Fourth Amendment is reasonableness, which is measured objectively by examining the totality of the circumstances surrounding a police officer's encounter with a citizen. The objective nature of the test also means that an encounter has become a seizure, depends upon the officer's objective behavior, not on any subjective suspicion of criminal activity. Given this objective focus, we need not concern ourselves with any suspicions the officer may have had about the defendant as he approached and turned in to engagement and conversation. So we can look at this with a clean slate. And the notion that the officer was suspicious doesn't really matter if his behavior is objectively reasonable. That's correct, Your Honor, but in this case, the officer's actions were not objectively reasonable. They were not objectively reasonable, again, when they approached without really any sort of indicators that Mr. Day was committing a crime. All we know is that there was a game party. The officers never testified that they suspected that Mr. Day was part of the game. The only thing that they were concerned about is that there was a bottle of alcohol in the car, and that the officers did not testify as to any sort of indicators of driving under the influence. Again, this is sort of counter to the state's notion that counsel did not ask any direct questions. Counsel asked Officer Wise, what reasonable suspicion did Officer Zock have to order Mr. Day out of the vehicle? And then Officer Wise had testified, I can't speculate, but I assume it was because of the alcohol. And then Officer Zock, when asked a direct question, I see my time is up. Go ahead. I take up a lot of your time. Continue. Thank you, Your Honor. So just very, very briefly, when asked, when Officer Zock was asked whether the bottle alone, did you suspect that Mr. Day was intoxicated, he said yes. I apologize. You had a question? Yes, and I guess I want to focus for a moment. I know you've pointed to the fact as to whether or not the defendant pulled a gun, if you will, from his waistband, or whether the, I'll say the firearm comes out, however you want to phrase it, during a physical altercation with police officers. I guess they still struggle with why isn't that an intervening circumstance? Your Honor, the reason why it's not an intervening circumstance is because, again, the cases which the state rely on refer to cases where a person either breaks free or is fleeing officers and drops contraband on the flight path. But counsel, whether you're fighting with them or you're fleeing, I guess they don't see a lot of distinction, because just because I don't successfully get away, it doesn't mean I'm not trying, not creating motion there in an instance. I understand your argument, Your Honor. But the reason why it's not just factually distinguishable but legally distinguishable, because in a case where someone is fleeing as opposed to just, I guess, struggling, for lack of a better word, the officers nevertheless have control over the person, whereas the officers hardly have physical control over someone. So when you agree, it's clear that he's not submitting at that point. Even if he was not submitting at that point, again, the state's proposition that if you're somehow not submitting, the seizure somehow ends, he was still nevertheless seized, because the officers had physical control over him the entire time, rather than someone who was fleeing, who then just, again, quoting Hodari D., it would be hardly realistic to say that someone who was fleeing, that the discovery of the contraband was related to the initial seizure. Counsel, let's extend that out. If instead of the gun ending up in the alleyway, it was fired, does that change anything? If it was fired? Sorry, Your Honor, I'm just thinking about your question. In that scenario, it's not thrown in the alleyway, it's just fired? Or the defendant intentionally fired it at the officer. Isn't all of those actions an intervening event? So if someone had fired directly at the officer, it could potentially be an intervening event, because it would change the character of the stop. And wasn't there testimony here that the gun was pointed at an officer? I think the testimony, Your Honor, that the barrel flew past Officer Wise's face. Not necessarily that it was pointed intentionally, Your Honor. Counsel, this court has written on several occasions that in the absence of police misconduct, exclusionary rule does not apply. What's the police misconduct in this case? Well, I believe you're referring to people being McDonald's. And, Your Honor, the misconduct is that they, again, similar to what the trial court found, they knew that they were going to order Mr. Day out of the vehicle even prior to when they did so. I mean, they came up to Mr. Day. How do we know that until they showed up in contact with Mr. Day that they were going to order him out of the vehicle? I don't know that the record shows anybody would be in a vehicle. Well, I believe the trial court found that given the fact that Officer Wise had a stop stick in hand. So implying that they were going to, again, and they surrounded the vehicle. They, given the fact that they were trying to, you know, clearly trying to intimidate Mr. Day. And because, again, why would they have a stop stick in hand, surround the vehicle, if they were not trying to, if they weren't trying to get him out of the vehicle or at least question him perfectly? Well, they didn't immediately say, get out of the vehicle. They walked up to him, did they? Well, they did walk up to him, Your Honor. The question is, they didn't immediately say, get out of the vehicle. They walked up to him, did they? No, it wasn't immediately, Your Honor. It was 37 seconds. Pretty short time. And they talked to him about, is this your car? Where is your car? And then after talking to him, they said, get out of the vehicle. Yeah, that's quite happening, Your Honor. But again, it was a very short time. Yes. Again. So this is police misconduct requiring that we should suppress the evidence of someone who pulls a gun on the cops when they are asking questions? It is, Your Honor. What's the cost of that societally, counsel? That cost, you know, so you have two competing interests. You have the cost of suppressing evidence, and then you have the cost of deterring Fourth Amendment violations. So we're going to, and again, what exactly did they do wrong here that we're going to deter to let off your claim to pull a gun on these cops? Again, Your Honor, the sole reason for the exclusionary rule is to deter Fourth Amendment violations. To deter police misconduct, according to the U.S. Supreme Court. To deter police misconduct. And it's also to deter Fourth Amendment violations as part of Davis v. United States. So, again, it's our position that Mr. Davis. Okay. Thank you, counsel. Thanks. Mr. Williams, any rebuttals, sir? Okay, Your Honor. Thank you, Your Honor. I'm going to start first with the distinction that counsel just tried to make between pulling a gun versus firing a gun versus I submit my brief, taking that note one step further, shooting a police officer. In any event, this is an intervening circumstance. We're talking about pulling a gun on a police officer. To any normal person, that is an objectively unthinkable act. That is unquestionably an intervening circumstance, if nothing else, as far as this argument goes. Now, to the characterization of pulling the gun that was talked about, the gun was in his waistband. He reached for the gun. The gun was then pointed at the officer before being wrestled away. I'm not sure there's a more accurate way to describe that sequence of events than the defendant pulled the gun. As Your Honor said, it didn't just come out of nowhere. It didn't just hit the ground. It was pointed in the officer's face. Again, we're all very fortunate that we're not here talking about something more serious because this easily could have been more serious. Counsel, I mentioned that it seems to me this is a question of the legitimacy of a frisk, ordering the defendant to get out of the car while they're talking to him, under the circumstances, the person who might be part of this gang gathering that the police heard about. It's my understanding, correct, that no one talked about that issue at all, either at the trial level or even now, that the real issue is the authority of the police and whether this was under all these circumstances, asking a frisk of which was clearly intended to do, simply put your hands on the roof of the car and turn around. Defendant did that. That's when the gun is pulled. And, of course, the burden is on the defendant to establish the law and procedures for suppression, and it's hard to sustain a trial court's order of suppressing when this wasn't even argued by the defendant. Have I missed it? Was this ever discussed? I don't believe so, Your Honor. For the purposes of this appeal, of course, I felt confined to the framing below, or else I would be inviting a favored forfeiture argument. But, yeah, I don't believe that was discussed at all. Essentially, I think the arguments got right into that this was an illegal seizure, which then gets into, as I mentioned before, the tension between the free-to-leave test versus the Doherty submission test. But, ultimately… Well, the whole discussion was on this bogus notion of stop procedure for walking up to a gunner. To that end, as Your Honor alluded to, and then I believe clarified, to simply walk up to somebody. I mean, I referenced that point in my brief. I mean, to a normal law-abiding citizen, three officers walking up to you, I think most normal people would ask, how can I help you? Not be defensive and then eventually pull a gun. Ultimately, the state's ultimate suggestion here is that exclusion cannot possibly be the result of this case because it creates a very dangerous incentive for people to react violently rather than challenge these issues in the courts. Unless this court has any further questions. Thank you, counsel. Thank you, Mr. Edelman. I hope this is your decision of your choice. And stand in recess.